IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| REBECCA H.,<br><br>    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION<br><br>Case No. 2:21-cv-00251-CMR<br>Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings (ECF 10). 28 U.S.C. § 636(c). Plaintiff Rebecca H. seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). After careful review of the record (ECF 13), the parties' briefs (ECF 16, 20), and arguments presented at a hearing held on August 2, 2022 (ECF 24), the undersigned concludes that the Commissioner's decision is supported by substantial evidence. For the reasons stated on the record at the hearing and as discussed below, the court hereby DENIES Plaintiff's Motion for Review of Agency Action (ECF 16) and AFFIRMS the decision of the Commissioner.

    **I.**  **BACKGROUND**

Plaintiff filed application for disability insurance benefits (DIB) in January 2017, alleging disability due to interstitial cystitis, generalized anxiety disorder, depression, and gastroparesis (Tr. 110). The ALJ followed the Commissioner's five-step sequential evaluation process for evaluating

1

disability claims. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ determined at step two that determined Plaintiff had severe impairments of interstitial cystitis, gastroparesis, depression, and anxiety (Tr. 20). The ALJ found that Plaintiff's cervical and lumbar degenerative disc disease, right shoulder degenerative joint disease, gastroesophageal reflux disease (GERD), and obesity were non-severe impairments (Tr. 20); and her fibromyalgia was not a medically determinable impairment (Tr. 21). At step three, the ALJ considered Plaintiff's gastroparesis under Listing 5.06 for inflammatory bowel disease, finding the criteria not met (Tr. 21). The ALJ considered Plaintiff's mental impairments under Listings 12.04 and 12.06, finding no limitation in understanding, remembering, or applying information; mild limitation in interacting with others; and moderate limitation in concentrating, persisting or maintaining pace and adapting or managing oneself (Tr. 21-22).

Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity (RFC), finding that she could do a range of light work that involved complex tasks, goal-oriented but not assembly-line-paced work, frequent interaction with others, and can adapt to routine changes in the workplace (Tr. 23). *See* 20 C.F.R. §§ 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."), 404.1567(b) (defining light work). At step four, the ALJ found that this RFC would allow Plaintiff to do her past relevant work as a telephone solicitor. The ALJ then made the alternative step-five finding that, in addition to being able to do her past relevant work, Plaintiff could also do other work existing in significant numbers in the national economy, including cashier, office helper, and routing clerk, all light work (Tr. 30). The ALJ thus concluded that Plaintiff was not disabled and denied disability benefits (Tr. 31). The Appeals Council then denied Plaintiff's request for review (Tr. 1–6), making the ALJ's decision the Commissioner's

final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981; 422.210(a). This appeal followed.

## II. STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id*. at 1154. Substantial evidence is "more than a mere scintilla," which means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Under this deferential standard, the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157. If the evidence is susceptible to multiple interpretations, the court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). That is, in reviewing under sentence four of 42 U.S.C. § 405(g), a court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the court believes the evidence is "equivocal." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

### III. DISCUSSION

Plaintiff challenges two aspects of the ALJ's decision (ECF 16, Plaintiff's Opening Brief (Pl. Br.)). First, she argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ did not properly weigh the medical and other opinions (Pl. Br. 8–22). Second, she argues that the ALJ should have found that fibromyalgia was a medically determinable impairment at step two, and that the ALJ's failure to do so "permeated the remainder of the decision" (Pl. Br. 22–25). The court finds that neither of these arguments is persuasive.

**A.    Substantial evidence supports the ALJ's evaluation of the medical and other opinions**

Under the governing regulations, the ALJ was required to weigh every medical opinion when assessing Plaintiff's RFC. *See* 20 C.F.R. § 404.1527.[1] There were disparate opinions relevant to Plaintiff's physical and mental abilities, some indicating that she was extremely limited and others indicating that she was not so limited. Consistent with the governing regulation, the ALJ weighed every opinion and provided reasons for that weight. The court finds that substantial evidence supports the ALJ's evaluation of the medical and other opinions.

**1.    Nurse practitioner Mr. Jones**

A treating nurse practitioner, Steven Jones, opined in February 2019 that Plaintiff experienced significant physical and mental limitations (Tr. 1004–07). As a nurse practitioner, Mr. Jones was not an "acceptable medical source" for purposes of this case. 20 C.F.R. § 404.1502(a)(7). Because he was not an acceptable medical source, the court must affirm the ALJ's

---

[1] The agency has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844-01 (Jan. 18, 2017) (final rules). Because Plaintiff filed her claim in January 2017, this matter is governed by 20 C.F.R. § 404.1527.

consideration of Mr. Jones's opinion if it can follow the ALJ's reasoning. *See id*. § 404.1527(f)(2); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) ("In the case of a nonacceptable medical source . . . the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" (citation omitted)). The court can readily follow the reasoning behind the little weight the ALJ gave Mr. Jones's opinions.

As the ALJ discussed, Mr. Jones's opinions were written about five months after the date last insured, and his opinions do not indicate that they were retrospective to prior to Plaintiff's date last insured (Tr. 28). The ALJ also found that the medical records do not support the extreme limitations that Mr. Jones opined. The ALJ cited objective imaging, which showed fairly mild limitations, and consultative physician Dr. Joseph Fyans's generally normal examination findings, which did not support Mr. Jones's opinion. Regarding Mr. Jones's opinion of Plaintiff's mental limitations, the ALJ found that there was nothing in the medical records supporting such limitations in mental functioning. The ALJ cited consultative psychologist Dr. Tanya Colledge's examination, where Plaintiff did not show such limitations. In addition, the ALJ found that many examinations show normal functioning.

The court can follow the ALJ's reasons for discounting Mr. Jones's opinions, and the ALJ's reasons are thus supported by substantial evidence. The court therefore finds no error in the ALJ's consideration of Mr. Jones's opinions.

### 2. Treating psychologist Dr. Anderson

Dr. Victoria Anderson opined that Plaintiff experienced marked or extreme limitations in almost every area of mental workplace functioning enumerated on the "Mental Capacity Assessment" form that she completed (Tr. 938–42). Because Dr. Anderson was a treating

physician, her opinions could have been entitled to controlling weight, but only if they were well-supported by medically acceptable clinical and laboratory diagnostic techniques and were not inconsistent with other substantial evidence in Plaintiff's case record. 20 C.F.R. § 404.1527(c)(2). The ALJ gave little weight to Dr. Anderson's opinions (Tr. 150). The court finds that the ALJ's reasons are legally sound and supported by substantial evidence.

The ALJ found that Dr. Anderson's opined mental limitations were on checked box forms and provided no explanation why Plaintiff would have such debilitating limitations (Tr. 150). *See* 20 C.F.R. § 404.1527(c)(3) (supportability relevant to the weight due a medical opinion). After indicating that Plaintiff experienced marked and extreme limitations, she wrote almost nothing when asked to "[d]escribe the medical/clinical findings that support this assessment" except "unmedicated depression and anxiety due to allergic reactions to medications" (Tr. 940–42). The court agrees that Dr. Anderson did not adequately explain the basis of her opinion.

The ALJ also found that Dr. Anderson's opinions were not consistent with the medical records (Tr. 150). *See* 20 C.F.R. § 404.1527(c)(4) (opinion is entitled to greater weight if it is consistent with the other evidence of record). The ALJ cited mental status examinations showing good functioning, and the ALJ contrasted Dr. Anderson's opinion with Dr. Colledge's generally normal mental status examination. The specific evidence cited by the ALJ is representative of other evidence in the record, as the record reflects normal mental status examination findings throughout the relevant period. *See Putnam v. Comm'r, SSA*, 789 F. App'x 694, 698 (10th Cir. 2019) ("Although the ALJ specifically cited these three exhibits, the record contains other evidence supporting his conclusions.").

While Plaintiff points to evidence that the court might find was consistent with and supportive of Dr. Anderson's opinion, the question for the court is whether the ALJ's reasons for discounting Dr. Anderson's opinion are supported by substantial evidence—not whether substantial evidence might support Plaintiff's position that Dr. Anderson's opinions were due more weight. *See Lax*, 489 F.3d at 1084 (the court may not displace the ALJ's choice between conflicting views). The court finds that the ALJ evaluated Dr. Anderson's opinions consistent with the governing regulations, and substantial evidence supports the reasons the ALJ gave for granting those opinions little weight.

### 3. Treating physician Dr. Purser

Dr. Dan Purser opined that Plaintiff experienced severe physical limitations, including that she was unable to sit, stand, or walk more than one hour in a workday; was unable to lift any weight; and would likely be absent from work more than four times a month. The ALJ gave little weight to Dr. Purser's opinion (Tr. 339–41). The ALJ discounted Dr. Purser's opinion because the doctor "filled out a checkbox form and provided no reasoning why [Plaintiff] would have such extreme limitations" (Tr. 151). The ALJ also found that Dr. Purser's opinion was due little weight because it was inconsistent with findings showing Plaintiff's pain had decreased with treatment. The ALJ explained that he found Dr. Purser's opinion was inconsistent with the objective record and greatly undermined by contemporaneous consultative examinations, x-rays, and MRIs. The ALJ found that Dr. Purser's opinion was also inconsistent with Plaintiff's part-time work throughout 2017. Finally, the ALJ found that Dr. Purser's opinion was vague as to Plaintiff's limited use of her arms and hands. The court finds that the ALJ's reasons are legally sound and supported by substantial evidence.

### 4. Consultative physician Dr. Fyans

A consultative examiner, Dr. Fyans, opined that his examination findings did not support any limitations on Plaintiff's physical ability to work (Tr. 707–14). The ALJ gave some weight to Dr. Fyans' opinion (Tr. 150–51). The ALJ then "tempered" this opinion to Plaintiff's benefit (Tr. 151), as is permissible. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."). Because the RFC is an administrative assessment made by an ALJ, not a medical assessment made by a doctor, *see Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005), the ALJ was not required to premise his RFC assessment on any medical opinion. The court concludes that the ALJ reasonably assessed Plaintiff's RFC based on all of the evidence, including Dr. Fyans' medical opinion.

### 5. Consultative psychologist Dr. Colledge

Following her consultative examination, Dr. Colledge opined that, while Plaintiff presented with a somewhat impaired capacity to tolerate work stress as it related to the psychological demands of a job, she appeared capable of remembering and carrying out simple and complex instructions (Tr. 715–19). The ALJ gave great weight to Dr. Colledge's opinion and consequently limited Plaintiff to complex tasks, goal-oriented but not assembly-line-paced work that involved frequently engaging in social interaction and adapting to routine changes in the workplace (Tr. 151). The court's "deferential standard of review precludes [it] from labeling findings as inconsistent if they can be harmonized." *Chismarich v. Berryhill*, 888 F.3d 978, 980

(8th Cir. 2018). The ALJ's mental RFC findings can be harmonized readily with Dr. Colledge's opinion.

**B.     Substantial evidence supports the ALJ's finding that fibromyalgia was not a medically determinable impairment**

At step two, Plaintiff bore the burden of proving that she had a medically determinable impairment (MDI) that met the regulatory definition of severe. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). An MDI is an "anatomical, physiological, or psychological abnormalit[y] that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The agency "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id*. Instead, an MDI "must be established by objective medical evidence from an acceptable medical source." *Id*. For purposes of this case, an acceptable medical source would have to be a licensed physician or a licensed psychologist. *See* 20 C.F.R. § 404.1502(a).

Social Security Ruling (SSR) 12-2p, 2012 WL 3104869, provides additional guidance on how the agency evaluates whether fibromyalgia is an MDI. As with other impairments, "a person can establish that he or she has an MDI of [fibromyalgia] by providing evidence from an acceptable medical source." *Id*. at *2. The agency will find that a claimant has an MDI of fibromyalgia only if (1) a physician diagnoses fibromyalgia and (2) that same physician provides evidence that shows the claimant satisfies one of the two sets of criteria outlined in the SSR. *Id*. Those two sets of criteria are generally based on alternative classification criteria developed by the American College of Rheumatology (ACR). *Id.*

Here, the ALJ considered whether Plaintiff's reported fibromyalgia was an MDI pursuant to the requirements of SSR 12-2p (Tr. 21). The ALJ found that Plaintiff's fibromyalgia was not an MDI because (1) Plaintiff did not have at least 11 positive tender points on both sides of the body and above and below the waist, and (2) the medical records did not support six or more repeated manifestations of fibromyalgia symptoms such as fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety, or irritable bowel syndrome. *See* SSR 12-2p, 2012 WL 3104869, at *2–3 (explaining that these are the two sets of criteria used to establish that a claimant has an MDI of fibromyalgia).

Moreover, at the 2020 administrative hearing, the ALJ asked Plaintiff's attorney whether there was evidence in the record that would establish fibromyalgia as an MDI during the relevant period (Tr. 63). Plaintiff's counsel responded, "I don't think so. . . I don't think there is the details that we would want . . . to satisfy the SSR criteria" (*id.*) The ALJ could reasonably rely on counsel's statement. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("[I]n cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, 'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored . . .'" (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997))).

The only acceptable medical source who diagnosed Plaintiff with fibromyalgia was Dr. Purser, but his diagnosis standing alone is insufficient to establish fibromyalgia as an MDI. SSR 12-2p, 2012 WL 3104869, at *2 ("We cannot rely upon the physician's diagnosis alone."). In addition to the diagnosis, the physician who diagnosed fibromyalgia—Dr. Purser—must also provide evidence consistent with the criteria outlined in the SSR. *Id*. ("We will find that a person

has an MDI of [fibromyalgia] *if the physician diagnosed [fibromyalgia] and provides*" evidence of the requisite criteria (emphasis added)).

Plaintiff concedes that her "medical records do not show tender points" (Pl. Br. 25). She therefore cannot prove the first set of criteria (the section II.A. criteria from SSR 12-2p) to establish fibromyalgia as an MDI. *See id*. at *2–3. Plaintiff would have to provide medical evidence from Dr. Purser showing all three of the section II.B. criteria from SSR 12-2p: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. *Id*. at *3.

The record here does not include a history of widespread pain documented by Dr. Purser. SSR 12-2p defines a history of widespread pain as "pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months." 2012 WL 3104869, at *2. Plaintiff cites her reports of pain between 2015 and 2017, but those reports were to chiropractors, not Dr. Purser (Pl. Br. 23). She cites other reports of pain between 2015 and 2016, but those reports were not made to Dr. Purser. Dr. Purser's records do not include evidence of widespread pain. Without evidence from Dr. Purser of widespread pain as defined by SSR 12-2p, the ALJ reasonably found that Plaintiff did not establish fibromyalgia as an MDI.

In sum, the ALJ properly evaluated the medical opinions and record evidence, and his findings are therefore supported by substantial evidence.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED, and Plaintiff's Motion for Review of Agency Action (ECF 16) is DENIED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 7 September 2022.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah